IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TINA BISHOP,<br>individually and on behalf all others<br>similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FAMILY DOLLAR<br>10401 Monroe Road,<br>Charlotte, NC 28201<br><br>**SERVE REGISTERED AGENT**<br><br>and<br><br>DOLLAR TREE, INC.<br>500 Volvo Parkway<br>Chesapeake, VA 23320<br><br>**SERVE REGISTERED AGENT**<br><br>*Defendants*. | CASE NO._____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Tina Bishop ("Plaintiff" or "Ms. Bishop"), on behalf of herself and all others similarly situated, brings this action against Defendants FAMILY DOLLAR ("Family Dollar") and DOLLAR TREE, INC. ("Dollar Tree") (collectively, "Defendants"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiff Bishop makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record.

## NATURE OF THE CASE

1. This class action arises out of the recently disclosed rodent infestation of a distribution center operated by Defendant Family Dollar in West Memphis, Arkansas. The warehouse stored and shipped products, including products that were intended for human and animal consumption. As a result of the rodent infestation, Plaintiff and thousands of Class Members who purchased these products were subjected to actual harm.

2. The U.S. Food and Drug Administration ("FDA") announced on February 18, 2022, that Family Dollar stores in six states may have received products from a distribution center in West Memphis, Arkansas that were contaminated by a rodent infestation. The agency warning includes items Plaintiff and Class Members purchased since January of 2021, such as food, cosmetics, vitamins and dietary supplements, over-the-counter medications, surgical masks, feminine hygiene products, and contact lens cleaning solutions, and toiletry items among others. The FDA is asking Family Dollar customers to contact the company if they purchased any of these products. The agency also recommends discarding any medical items immediately and is working with the store chain to begin a product recall.

3. Family Dollar has issued a voluntary recall which covered numerous FDA regulated products, including medicine, pet food and cosmetics, that were sold between January 2021 and February 2022 in Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee (the "Recalled Products").

4. The use or consumption of affected products presents a risk of illness due to the potential presence of *Salmonella*, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (*e.g.*, patients with cancer undergoing chemotherapy treatments, organ

transplant recipient, etc.) and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (*i.e.*, infected aneurysms), endocarditis and arthritis.

5.   Accordingly, Plaintiff, individually and on behalf of a Class of all persons similarly situated, brings claims for breach of the implied warranty of merchantability and unjust enrichment.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from a Defendant.

7.   The Court has personal jurisdiction over Defendants Dollar Tree and Family Dollar because Dollar Tree, a wholly owned subsidiary of Dollar Tree, does business and/or transacts business in this District.

8.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff Bishop resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff is and at all times mentioned herein an individual citizen and resident of Memphis, Tennessee. Ms. Bishop purchased one or more of the Recalled Products from Family Dollar stores in and around the Memphis, Tennessee area.

10. Defendant Family Dollar maintains its company offices in Charlotte, North Carolina at 10401 Monroe Road, Charlotte, North Carolina 28201. Family Dollar is a wholly owned subsidiary of Defendant Dollar Tree.

11. Defendant Dollar Tree is a Virginia corporation whose corporate offices are located at 500 Volvo Parkway, Chesapeake, Virginia 23320.

## STATEMENT OF COMMON FACTS

12. Family Dollar is a wholly owned subsidiary of Dollar Tree.

13. Dollar Tree is a Fortune 200 company and a leading operator of discount variety stores in North America for more than thirty years. The company operates more than 15,500 stores across the 48 contiguous states and five Canadian provinces, supported by a coast-to-coast logistics network and more than 193,000 associates.

14. Family Dollar operates a distribution center in West Memphis, Arkansas (the "Distribution Center"). The Distribution Center distributed products to 404 stores across six states – Alabama, Arkansas, Louisiana, Missouri, Mississippi and Tennessee.

15. Records obtained through the Arkansas Freedom of Information Act show that the Distribution Center has been inspected by the Arkansas Department of Health ("ADH") at least five times since March 3, 2021.

16. During a site inspection on March 3, 2021, state inspectors reported seeing significant rodent activity where human and pet food is stored. "I observed live and dead rodents

in this area. I observed products that had been contaminated by rodents," the inspector wrote. "This product was disposed on site."

17. Health officials at the time reported that staff at the Distribution Center said they knew about the rodent issue and that it had been going on for about 60 days. The inspection documents showed that the facility claimed to have hired a pest control company that would service the facility three times weekly to get the issue under control. The documents also indicated that any affected merchandise would not go to stores.

18. "The firm has a policy which states if product has any evidence of pest activity, gnawing, droppings, etc., the entire pallet is disposed in the onsite compacter," the report shows.

19. During the 2021 inspections, which took place on March 3, March 19, April 2, and September 22, records showed that Arkansas inspectors found rodents where human and pet food is stored. In September's inspection, documents show the state found a rodent in a case of chips but noted the facility had made improvements in sanitation and pest control.

20. However, in a subsequent inspection on January 3, 2022, health inspectors reported that effective measures were not being taken to stop the pest problem. The state reported finding significant rodent activity where human and pet food is stored, including a dead roof rat in one of the facility's aisles.

21. Arkansas health officials notified the Food and Drug Administration ("FDA") about the problem in October of 2021, after four of the state's inspections.

22. In January of 2022, the FDA was alerted to unsanitary conditions at the Distribution Center by a consumer complaint.

23. FDA inspectors concluded their investigation on February 11, 2022, after finding "live rodents, dead rodents in various states of decay, rodent feces and urine, evidence of gnawing,

nesting and rodent odors throughout the facility, dead birds and bird droppings" at the Distribution Center.

24. More than 1,100 dead rodents were found after the Distribution Center was fumigated.

25. The FDA reported that in addition to its investigation of the premises, internal company records showed "the collection of more than 2,300 rodents between Mar. 29 and Sep. 17, 2021, demonstrating a history of infestation."

26. As a result of the rodent infestation at the Arkansas Distribution Center, Family Dollar temporarily closed more than 400 stores in six states so that Recalled Products could be removed from store shelves.

27. On Friday, February 18, 2022, Family Dollar issued a voluntary recall of Recalled Products which covered numerous FDA regulated products, including medicine, pet food and cosmetics that were sold between January 2021 and February 2022 in Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee.

28. Family Dollar said in its announcement that the voluntary recall applies to products that were sent to the affected stores by the Distribution Center.

29. The company said it has asked the affected stores "to check their stock immediately and to quarantine and discontinue the sale of any affected product."

30. The FDA said that it initiated its investigation of the Distribution Center, known as Family Dollar Distribution Center 202, in January 2022, and that "Family Dollar ceased distribution of products within days of the FDA inspection team's arrival on-site."

31. Rodents can pass diseases on to humans, including salmonellosis, an infection caused by *Salmonella* bacteria, which can be especially dangerous to immunocompromised and other vulnerable people.

32. The FDA advised consumers to throw away any drugs, medical devices, cosmetics, and dietary supplements they bought from the affected stores in the past 13 months.

33. As stated by Judith McMeekin, the FDA's Associate Commissioner for Regulatory Affairs, consumers who depend on Family Dollar stores for necessary goods such as food and medicine "deserve products that are safe." "No one should be subjected to products stored in the kind of unacceptable conditions that we found in this Family Dollar distribution facility," McMeekin said in a statement. "These conditions appear to be violations of federal law that could put families' health at risk. We will continue to work to protect consumers."

## STATEMENT OF INDIVIDUAL FACTS

34. Plaintiff Tina Bishop has purchased numerous items from the Family Dollar Store #00876 located at 2920 Lamar Ave., in Memphis, TN that fall under the purview of the FDA. For example, on October 13, 2021, Ms. Bishop purchased Queen Anne Chocolate Covered Cherries (6 oz) and Chateau Chocolate Caramel Cluster (9 oz).

35. Ms. Bishop purchased the items reasonably believing that they were safe and would not put the health of herself and members of her household at risk.

36. The items Ms. Bishop purchased include food and other items for her family and herself that are subject to the recall.

37. Had Ms. Bishop been aware of the rodent infestation, she would not have purchased these items from Family Dollar stores.

38. Ms. Bishop did not receive the benefit of her bargain and suffered damages as a

result of her purchases from Family Dollar.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to a class defined as: "All persons who purchased a Recalled Product from Family Dollar."

40. Excluded from the Class are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

41. Plaintiff hereby reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

42. <u>Numerosity</u>. Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of persons who purchased Recalled Products.

43. <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation, whether the Defendants may be held liable to the Plaintiff for breach of implied warranty of merchantability and unjust enrichment.

44. <u>Typicality</u>. Plaintiff's claims are typical of the claims of other Class Members. Plaintiff and each of the other Class Members purchased the Recalled Products.

45. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

46. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

47. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## CAUSES OF ACTION

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

48. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

49. "Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314(1).

50. "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; . . . (c) are fit for the ordinary purposes for which such goods are used; . . . (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and . . . (f) conform to the promise or affirmations of fact made on the container or label if any." UCC § 2-314(2).

51. "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." UCC § 2-313(2).

52. Defendants are "merchants" within the meaning of UCC § 2-104(1).

53. The Recalled Products were not merchantable at the time of sale because they were not fit for human or animal consumption. Defendants therefore breached the implied warranty of merchantability.

54. Plaintiff and Class Members sustained damages as a direct and proximate result of Defendants' breach, including damages for economic injuries from spending money on a product that should not have been sold to them.

55. Plaintiff, on behalf of herself and all similarly situated Class Members, demands judgment against Defendants for compensatory damages, including a complete refund of the purchase price of the Recalled Products, pre- and post-judgment interest, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT

56. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

57. Defendants received from Plaintiff and Class Members benefits in the form of money and profits from the sale of the Recalled Products.

58. Defendants sold the Recalled Products to the Plaintiff and Class Members with knowledge of the rat infestation and with knowledge that the Recalled Products were not fit for human or animal consumption at the time of sale.

59. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain benefits obtained from Plaintiff and Class Members.

60. Plaintiff and Class Members are entitled to restitution of the amount by which Defendants were unjustly enriched at their expense.

61. Plaintiff, on behalf of herself and all similarly situated Class Members, demands restitution by the Defendants in the amounts by which Defendants have been unjustly enriched at Plaintiff's and Class Members' expense, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bishop, on behalf of herself and all similarly situated individuals, demand judgment against Defendants as follows:

    a. Declaring this action to be a proper Class action maintainable pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and her Counsel to be representatives of the Classes;

    b. Awarding damages sustained by Plaintiff and the Class as a result of the Defendants' conduct, together with pre-judgment interest;

    c. Awarding punitive damages sustained by Plaintiff and the Class as a result of the Defendants' conduct, together with pre-judgment interest;

    d.    Finding that Defendants have been unjustly enriched and requiring them to refund all unjust benefits to Plaintiff and the Class, together with pre-judgment interest;

    e.    Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff and the Classes' Counsel and experts, and reimbursement of expenses;

    f.    Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, requests a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated: June 27, 2022

Respectfully submitted,

**LAW OFFICES OF LIBBY & NAHMIAS**

_____
Stephen F. Libby #15542
5384 Poplar Ave., Ste. 410
Memphis, TN 38119
901-343-0777
901-343-0780 Fax
steve@libbylawfirm.com

**LYNCH CARPENTER LLP**
Katrina Carroll*
111 W. Washington Street
Suite 1240
Chicago, IL 60602
P (312) 750-1265
katrina@lcllp.com

**AUDET & PARTNERS, LLP**
William M. Audet (CA SBN 117456)*
Ling Y. Kuang (CA SBN 296873)*
Kurt D. Kessler (CA SBN 327334)*
711 Van Ness, Suite 500
San Francisco, CA 94102-3229
Telephone: 415.568.2555
waudet@audetlaw.com; lkuang@audetlaw.com
kkessler@audetlaw.com
*Application for pro hac vice admission forthcoming*
*Counsel for Plaintiffs and Proposed Classes*